UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| CATHERINE JEANG | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** MOTION TO CONFIRM ARBITRATION FINAL AWARD (Dkt. 1, filed on JULY 27, 2022)

## I.     INTRODUCTION

On July 27, 2022, petitioners Armin Azod, Ramez Elgammal, Shantanu Sharma, Dong Zhang, and Peter John (the "Azod parties") filed a motion to confirm an arbitration final award against respondents James G. Robinson, Morgan Creek Productions, Inc. ("Morgan Creek"), Cecilia, LLC ("Cecilia"), and Good Stuff, LLC ("Good Stuff"), (collectively, the "Robinson parties"). Dkt. 1. Robinson is the sole owner of Morgan Creek, Cecilia, and Good Stuff. Id. at 5-6. On September 26, 2022, respondents filed an opposition to petitioners' motion to confirm. Dkt. 43. On October 3, 2022, petitioners filed a reply in support of their motion to confirm. Dkt. 44. On October 18, 2022, with the Court's permission, respondents filed a surreply in opposition to petitioners' motion to confirm. Dkt. 51. The motion to confirm is now before the Court.

On November 7, 2022, the Court held a hearing on the motion to confirm. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

## II.    BACKGROUND

### A.    The 2016 Case

The dispute between the parties arises out of an Asset Purchase Agreement (the "APA"), which respondent Cecilia entered into with the Azod parties on October 15, 2014.  Dkt. 1 at 2.  Pursuant to the APA, Cecilia purchased Novoform, a limited liability company, and certain of its assets, from the Azod parties.  Id.  Cecilia failed to pay the Azod parties over $850,000 due under the APA.  Id.  On January 20, 2016, the Azod parties filed suit against Respondents Cecilia, Robinson, and Morgan Creek in the Central District of California (the "2016 case"), seeking relief in the form of all payments due under the APA and attorneys' fees and costs.  Id. at 2-3.  On April 7, 2016, respondents filed a motion to compel arbitration and to dismiss for improper venue, arguing that the APA contained a clause that required arbitration of the dispute.  Id. at 3.  On May 10, 2016, the Honorable Judge John F. Walter granted respondents' motion and ordered the parties to arbitrate.  Id.

### B.    First JAMS Arbitration Phase

The parties proceeded to arbitrate the dispute before a JAMS arbitrator.  Id.  On September 16, 2016, petitioners submitted a demand for arbitration, asserting claims for breach of contract and fraud against respondents.  Dkt. 1-2 at 2-3.  Robinson, Cecilia, and Good Stuff counterclaimed against petitioners for rescission based on fraud, rescission based on breach of contract, breach of contract, breach of implied covenant of good faith and fair dealing, fraud, and breach of fiduciary duty.  Id. at 3.  The parties engaged in discovery and motion practice from January 2017 to July 2018.  Id. at 3-4.  On September 29, 2018, the arbitrator dismissed petitioners' fraud claims.  Id. at 4.  On November 6, 2018, a five-day merits hearing commenced that addressed seven questions pertaining to respondents' counterclaims.  Id.  On February 7, 2019, the arbitrator issued the Partial Final Award ("PFA"), awarding judgment in the amount of $856,886, in favor of petitioners and against Cecilia.  Id.  The PFA additionally imposed the costs of arbitration against Cecilia.  Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

On March 1, 2019, the arbitrator scheduled a hearing to address remaining issues, including attorneys' fees and costs, prejudgment and post-judgment interest, and whether the non-Cecilia respondents could be liable for breach of contract damages. Id. at 4-5. Respondents argued that the arbitrator lacked jurisdiction to make any award against the non-Cecilia respondents, and this dispute was briefed and heard by the arbitrator. Id. at 5. On September 17, 2019, the arbitrator issued a scheduling order stating that the Partial Final Award was not final with respect to the potential liability of the non-Cecilia respondents. Id.

C.     **The 2019 Case**

On November 6, 2019, the Robinson parties filed a petition to confirm the PFA in the Central District of California, before the Honorable Judge Otis D. Wright (the "2019 case"). Dkt. 1 at 4. On January 17, 2020, the Azod parties filed a motion to stay the proceeding before Judge Wright until completion of the arbitration. Id. at 5. On May 21, 2020, Judge Wright granted the Azod parties' motion and ordered the parties to file joint status reports pending completion of the arbitration. Id. Over the following two years, the parties filed nine status reports. Id.

D.     **Second JAMS Arbitration Phase**

While proceedings in the 2019 case were stayed, arbitration of the liability of respondents Robinson, Morgan Creek, and Good Stuff continued. Id. In this phase, the parties litigated whether the non-Cecilia respondents could be held liable for breach of contract under a theory of equitable estoppel, whether they were entitled to attorneys' fees and costs under Section 21 of the APA, and whether they were liable to petitioners for attorneys' fees and costs. Dkt. 1-2 at 5-7. On May 15, 2020, following extensive litigation of these issues, the arbitrator issued an Interim Award, which reiterated that petitioners were the prevailing party and found that Robinson and Morgan Creek were liable for attorneys' fees and costs under the theory of equitable estoppel, even though they were not signatories to the APA, because they attempted to enforce the APA to their benefit. Id. at 7. The arbitrator found that the doctrine of equitable estoppel could bind Robinson and Morgan Creek to the APA for all purposes but declined to exercise his equitable discretion to hold them liable for breach of contract damages, reasoning that a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

greater degree of intentionality was required to hold them liable for breach of contract damages under the doctrine. Id.; dkt. 43-1, Exh. I at 14. The Interim Award additionally found that respondents were not entitled to attorneys' fees and costs because they were not the prevailing party, as defined by the APA. Dkt. 1-2 at 7.

Following the Interim Award, both sides filed motions for reconsideration, which were fully briefed and heard. Id. On May 18, 2022, the arbitrator issued a final award (the "Final Award") adopting and integrating the PFA. Dkt. 1 at 4. The Final Award reaffirmed that petitioners prevailed against each respondent and awarded petitioners attorneys' fees, costs, and expenses jointly and severally against Cecilia, Morgan Creek, and Robinson. Id. at 5-6. The Final Award found that Good Stuff, in addition to Cecilia, was liable for contract damages. Dkt. 1-2 at 80.

### E. Motions to Confirm and Vacate the Final Award

On May 31, 2022, petitioners requested a meet and confer regarding their plan to file a motion to confirm the Final Award in the still pending 2019 case. Dkt. 1 at 8. On June 1, 2022, respondents filed a petition to vacate or modify the arbitration award in Maryland state court. Id.

On June 6, 2022, respondents, without first meeting and conferring with petitioners, filed a notice of voluntary dismissal of the petition to confirm the arbitration award that they filed in the Central District of California in the 2019 case, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Id. at 8-9. On June 7, 2022, the action was dismissed without prejudice. Id. at 9. On July 19, 2022, petitioners filed a motion to vacate the dismissal, arguing that respondents had improperly filed a unilateral notice of voluntary dismissal. Id. On that same day, petitioners filed a motion to lift the stay and to confirm the Final Award. Id. Petitioners' motions were stricken because the case was already closed. Id.

On July 27, 2022, petitioners filed their motion to confirm the arbitration award. See generally dkt. 1. On August 29, 2022, respondents filed a motion to dismiss petitioners' motion to confirm the arbitration award, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3). Dkt. 35. On October 24, 2022, the Court held a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

hearing on respondents' motion to dismiss and took the matter under submission. The motion to confirm the arbitration award is presently before the Court.

## III.   LEGAL STANDARD

Pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9, a party to an arbitration agreement may apply for an order confirming an arbitration award "any time within one year after the award." 9 U.S.C. § 9. "[T]he court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]." Id. Section 10 of the FAA provides for vacatur of an award:

(1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Section 11 of the FAA allows for modification or correction of an award where "there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award;" "the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted;" or "the award is imperfect in matter of form not affecting the merits of the controversy." 9 U.S.C. § 11.

The Court's review of an arbitration award is "extremely limited." A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992). "Unless the award is vacated as provided in § 10, or modified as provided in § 11 . . . , 'confirmation is required even in the face of erroneous findings of fact or misinterpretations of law.'" Lagstein v. Certain Underwriters at Lloyd's, London, 607 F.3d 634, 640 (9th Cir. 2010) (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 994 (9th Cir. 2003)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|------------------------|------|------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

## IV.  DISCUSSION

Petitioners move to confirm the Final Award, arguing that none of the narrow grounds for vacatur or modification or correction under sections 10 and 11 of the FAA are present. Dkt. 1 at 14-16. According to petitioners, the arbitrator "conducted the proceedings impartially and provided the Robinson Parties multiple opportunities to plead their case, as evidenced by the additional round of discovery, over 33 briefs filed by the parties, and six hearings held since the PFA issued in February 2019." Id. at 15. Petitioners point out that the arbitrator additionally permitted respondents to file a motion for reconsideration, which was fully briefed and decided following a hearing. Id. In further support of their confirmation, petitioners contend that the arbitrator has extensive experience and wrote a detailed 180-page Final Award, "in which he meticulously analyzed and decided the issues submitted to him." Id. at 15-16.

### A.  Applicable Law

As an initial matter, the parties dispute which law governs the motion to confirm the arbitration award. Petitioners contend that the Final Award is a foreign arbitration award that falls under Chapter 2 of the FAA, known as the New York Convention (the "Convention"). Dkt. 1 at 12. Article V of the Convention sets forth only seven grounds on which a court may refuse or defer recognition of a foreign arbitration award. Id. Petitioners assert that the additional defenses to confirmation of an arbitration award set forth in Chapter 1 of the FAA apply only to domestic awards, and not to foreign awards governed by the Convention, because the FAA states that Chapter 1 applies to awards under the Convention only to the extent that Chapter 1 and the Convention do not conflict. Id. at 13 (citing GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC, 140 S. Ct. 1637, 1644 (2020)). According to petitioners, because the seven grounds in the Convention are exclusive and do not include the additional defenses in Chapter 1, the defenses in Chapter 1 conflict with the Convention and thus do not provide grounds for refusing to confirm an arbitration award to which the Convention applies. Dkt. 1 at 13. Respondents counter that the Final Award is not sufficiently foreign to fall under the Convention, and, as a result, Chapter 2 does not apply. Dkt. 43 at 7 n.7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

The Court concludes that, regardless of whether the Convention applies to the Final Award, respondents may validly raise the defenses in Chapter 1 of the FAA. Article V(1)(e) of the Convention provides that a court may refuse to confirm an arbitration award falling under the Convention that has been "set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Numerous courts of appeals and district courts in the Ninth Circuit have interpreted this language to incorporate Chapter 1 of the FAA into the Convention where the arbitration award was made in the United States and/or under United States law. See Immersion Corp. v. Sony Computer Entertainment America LLC, 188 F. Supp. 3d 960, 966 (N.D. Cal. 2016) ("[T]he weight of authority favors applying FAA [Chapter 1] defenses to New York Convention arbitration awards made in the United States."); LaPine v. Kyocera Corp., No. C 07-06132 MHP, 2008 WL 2168914, at *5 (N.D. Cal. May 23, 2008) (explaining that awards made in the United States under the Convention are subject to the FAA Chapter 1 defenses); Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account, 618 F.3d 277, 292 (3d Cir. 2010), as amended (Dec. 7, 2010) ("When both the arbitration and the enforcement of an award falling under the Convention occur in the United States, there is no conflict between the Convention and the domestic FAA because Article V(1)(e) . . . incorporates the domestic FAA.").

Thus, while the Convention may override Chapter 1 of the FAA with respect to arbitration awards made outside of the United States and under non-U.S. law, the domestic defenses in Chapter 1 of the FAA apply to awards made in the United States, regardless of whether the award falls under the Convention. Because the Final Award was made in the United States, it is subject to the defenses in Chapter 1 of the FAA, irrespective of whether it falls under the Convention. Accordingly, the Court need not determine whether the Convention applies for the purposes of this motion to confirm.

The parties additionally dispute whether the Maryland Uniform Arbitration Act ("MUAA"), and not the FAA, governs confirmation of the Final Award. In their opposition, respondents argue that the MUAA governs petitioners' award pursuant to Section 20 of the APA, which provides that the APA shall be "governed by and interpreted and enforced in accordance with the laws of the State of Maryland without reference to its conflict of laws provisions." Dkt. 43 at 7. There is a "strong default presumption [] that the [Federal Arbitration Act], not state law, supplies the rules for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

arbitration." Fid. Fed. Bank, FSB v. Durga Ma Corp., 386 F.3d 1306, 1311 (9th Cir. 2004) (alterations in original).  Nonetheless, parties to a contract are not restricted to the procedural rules established by the FAA and may "specify by contract the rules under which the arbitration will be conducted." Volt Inf. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).  To overcome the strong presumption in favor of applying the FAA, parties must evidence a "clear intent" to incorporate state law rules for arbitration.  Fid. Fed. Bank, FSB, 386 F.3d at 1311.

Respondents' arguments against confirmation of the Final Award invoke grounds that are viable under both the FAA and Maryland law, specifically, that the arbitrator exceeded his authority and that the Final Award was completely irrational and a manifest disregard for governing law.  See 9 U.S.C. § 10(a)(4) (grounds for vacating include "where the arbitrators exceeded their powers, or so imperfectly executed them that that a mutual, final, and definite award upon the subject matter submitted was not made"); Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727, 731 (9th Cir. 2006) ("[arbitrators] exceed their powers . . . when the award is completely irrational, or exhibits a manifest disregard of law."); MUAA § 3-224(b)(3) (grounds for vacating include "[t]he arbitrators exceeded their powers"); Baltimore Cnty. Fraternal Order of Police Lodge No. 4 v. Baltimore Cnty., 429 Md. 533, 564 (2012) (explaining that arbitration award should not be disturbed unless it "demonstrates a manifest disregard of the law"); O-S Corp. v. Samuel A. Kroll, Inc., 29 Md. App. 406, 408-09 (Md. App. 1975) (finding award may be vacated if it is completely irrational).  Furthermore, both federal law and Maryland law prohibit arbitrators from conducting hearings in a manner that substantially prejudices the rights of a party.  See 9 U.S.C. § 10(a)(3); MUAA § 3-224(b)(4).  And "Maryland courts have affirmed that the MUAA is to be construed in accord with the FAA."  Barbagallo v. Niagara Credit Sols., Inc., No. DKC 12-1885, 2012 WL 6478956, at *4 (D. Md. Dec. 4, 2012).

Thus, for the purposes of addressing respondents' defenses, there is no conflict between the FAA and Maryland procedural law that would require the Court to determine whether Section 20 of the APA evidences a clear intent to override the strong presumption in favor of the FAA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

**B.      Timeliness of Request to Vacate the Final Award**

In their reply, petitioners contend that respondents' opposition is functionally a motion to vacate and that this request is time-barred under the FAA. Dkt. 44 at 9. The FAA provides that any "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. If the adverse parties are nonresidents of the district within which the award was made, "notice of the application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of the court." Id. Petitioners argue that the Final Award was issued and served on the parties on May 18, 2022, and, to comply with the three-month rule, respondents were required to serve petitioners with a notice to vacate, modify, or correct no later than August 18, 2022. Dkt. 44 at 10. Respondents' request to vacate in their opposition was filed on September 26, 2022, over one month after the August 18, 2022 deadline. Id.

Petitioners further argue that, while respondents filed a petition to vacate or modify the award in Maryland, they failed to serve all of the petitioners by August 18, 2022. Id. Specifically, petitioners argue that neither petitioner Elgammal nor petitioner Zhang— who are not residents of Maryland where the Final Award was made—were served by the U.S. Marshal, as required for nonresident parties. Id. at 10-11. Accordingly, petitioners assert, respondents' request to vacate the Final Award should be denied. Id. at 11.

In their surreply, respondents first argue that petitioners' timeliness defense under the FAA is improperly raised for the first time in their reply brief and should be ignored on these grounds. Dkt. 51 at 1. Respondents next argue that 9 U.S.C. § 12 does not apply to the petition to vacate filed by respondents in Maryland state court. Id. at 2. The MUAA requires that a petition to vacate be filed within thirty days of issuance of the arbitration award and does not impose requirements as to how adverse parties should be served. Id. Respondents additionally assert that petitioners have attempted to convert the Maryland state court action into an untimely federal action by resisting service in the Maryland state court action and subsequently removing to federal court in Maryland immediately after the 90-day period had expired. Id. at 4. Respondents contend that the Court should deem respondents' arguments timely under equitable principals, in light of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

petitioners' "sandbagging" removal tactics to render respondents' arguments untimely. Id. at 6.[1]

The timing requirements for moving to vacate an arbitration award apply both to motions to vacate and to requests to vacate in oppositions to motions to confirm. Brotherhood of Teamsters & Auto Truck Drivers v. Celotex Corp., 708 F.2d 488, 490 (9th Cir. 1983) ("[An] unsuccessful party at arbitration who did not move to vacate the award within the prescribed time may not subsequently raise, as affirmative defenses in a suit to enforce the award, contentions that it could have raised in a timely petition to vacate the award."). Here, the request to vacate raised in respondents' opposition to petitioners' motion to confirm was untimely under both the FAA and Maryland law, which require filing within ninety days and thirty days of issuance of the final award, respectively. In any event, even if the Court accepts respondents' contention that its filing in Maryland state court and/or petitioners' conduct in the courts of Maryland somehow render respondents' request to vacate before this Court timely, the Court concludes, as explained below, that respondents have failed to show that vacatur is warranted. Accordingly, the Final Award should be confirmed.

## C.    Respondents' Challenges to the Final Award

### 1.    Re-Litigation of Claims

Respondents argue that the motion to confirm must be denied because the arbitrator exceeded his authority by forcing respondents to litigate an issue that was already fully litigated and resolved. Dkt. 43 at 8. According to respondents, the issue of whether the non-Cecilia respondents should be held liable for breach of contract pursuant an alter ego theory was squarely before the arbitrator, and, at the merits hearing, petitioners "failed to present any persuasive evidence supporting their alter ego allegations." Id. at 8-9. Respondents point out that the PFA, under the heading "Is the

---

[1]   In their surreply, respondents additionally request that the Court dismiss, transfer, or stay this action pending resolution of the motion to vacate that they filed in Maryland, on first-to-file grounds. Dkt. 51 at 5. The Court will address the propriety of dismissal and transfer in the order on respondents' motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

APA a valid contract binding on Respondents?", awarded judgment in favor of petitioners and only against Cecilia. Id. at 9. According to respondents, the arbitrator did not expressly reserve the issue of joint and several liability for breach of the APA as against the other respondents but rather only reserved decision as to prejudgment and post-judgment interest and attorneys' fees and costs. Id.

Respondents argue that, under the doctrine of functus officio, which prohibits revisiting the merits of an award after it has been issued, the arbitrator "should never have forced [r]espondents to litigate the issue of contract liability for Robinson, Morgan Creek and Good Stuff" in the second phase of the arbitration. Id. at 10.

In reply, petitioners argue that the JAMS Rules, which governed the arbitration pursuant to the APA, granted the arbitrator broad powers to decide how to conduct the arbitration, including the order in which to hear issues, take evidence, and make awards. Dkt. 44 at 13-14. Petitioners contend that the arbitrator acted within this broad authority when he reserved issues of joint and several liability for after the merits hearing, the PFA, and the Interim Award. Id. at 14 (citing Stolt-Nielsen S.A. v. AnimalFeeds International Corp., 559 U.S. 662, 685 (2010) ("Procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.")).

Under the FAA, a party may challenge an arbitration award on the ground that "the arbitrators exceeded their power." 9 U.S.C. § 10(a)(4). In determining whether an arbitrator has exceeded their power, courts recognize that "[a] party 'has a right to arbitration according to the terms for which it contracted.'" Lagstein, 607 F.3d at 643 (quoting W. Employers Ins. Co. v. Jefferies & Co., 958 F.2d 258, 261 (9th Cir. 1992)). Thus, "arbitrators exceed their powers for purposes of § 10(a)(4) when they 'act outside the scope of the parties' contractual agreement.'" Lagstein, 607 F.3d at 643 (quoting Michigan Mut. Ins. Co. v. Unigard Sec. Ins. Co., 44 F.3d 826, 830 (9th Cir. 1995)).

The Court finds that the arbitrator did not exceed his powers under the APA by requiring that the parties litigate the liability of the non-Cecilia respondents in the second phase of arbitration. The PFA states that, three days before the merits hearing commenced, the parties stipulated to several issues and "left open" "[t]he liability of Mr.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|--------------------------|------|------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

Robinson and Morgan Creek for breach of contract damages." Dkt. 1-6 at 8. The PFA concluded that the APA was a valid contract that had not been breached by petitioners, and, thus, Cecilia, as a party to the APA, was liable for the breach of contract damages stipulated to by the parties. Id. at 64. Contrary to respondents' contention, this finding does not clearly indicate that the PFA decided joint and several liability of the non-Cecilia respondents. And, even if the alter ego theory was before the arbitrator at the merits hearing, that would not mean that the arbitrator could not reserve judgment on whether the non-Cecilia respondents could be liable for contract damages under a different theory.

Furthermore, the arbitrator's conduct following issuance of the PFA indicates that the issue had been reserved for the second phase of arbitration. Within weeks of the PFA being issued, the arbitrator held a hearing to address the non-Cecilia respondents' potential liability for contract damages, among other issues. Dkt 1-2 at 8. At the hearing, respondents asserted that the arbitrator lacked authority to decide this issue, and, subsequently, the parties briefed and were heard on the issue. Id. On September 17, 2019, the arbitrator "ruled definitively that the Partial Final Award was not, and was manifestly never intended to be, final with respect to the potential liability of [r]espondents Mr. Robinson, Good Stuff, and Morgan Creek." Id. Likewise, the Final Award states that the PFA "expressly reserved for later decision whether respondents other than Cecilia were liable to Claimants for breach of contract and/or for attorneys' fees, costs, and interest." Id. at 4. In granting petitioners' motion to stay when respondents attempted to enforce the PFA in in the 2019 case, Judge Wright held that the arbitrator had retained authority to determine the liability of the non-Cecilia respondents. Id.

Accordingly, in light of these indications that the arbitrator reserved the issue of the non-Cecilia respondents' liability for contract damages, as well as his broad powers to hear issues and make awards in the order that he sees fit pursuant to the JAMS Rules incorporated into the APA, the arbitrator did not "act outside the scope of the parties' contractual agreement" so as to "exceed [his] powers." Michigan Mut. Ins. Co., 44 F.3d at 830.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|-------------------------|------|------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

2.   Determination of Good Stuff's Liability

Respondents additionally argue that Good Stuff's right to due process and fundamental fairness was violated when the arbitrator issued the Interim Award ruling that claimants did not prevail on their breach of contract claim against Robinson, Morgan Creek, and Good Stuff and subsequently reversed this decision as to Good Stuff in the Final Award, finding that both Cecilia and Good Stuff were liable for breach of contract damages. Dkt. 43 at 11. This change of course, respondents contend, occurred without any notice to Good Stuff or opportunity for briefing or hearing, depriving Good Stuff of its right to be heard, to present evidence material to the controversy, to cross examine witnesses, and to a determination of the controversy upon the evidence produced. Id. at 11-12.

In response, petitioners argue that the determination in the Final Award on equitable estoppel "came after additional discovery, multiple rounds of briefing, and four hearings." Dkt. 44 at 21. Throughout this litigation, petitioners contend, Good Stuff was represented by counsel, who submitted briefs on Good Stuff's behalf and participated in all hearings. Id. Accordingly, petitioners assert that Good Stuff was heard on the issue of its liability and that the arbitrator's finding that Good Stuff could be bound by the APA pursuant to the doctrine of equitable estoppel was within his broad authority. Id.

"In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, we ask whether the parties received a fundamentally fair hearing." Move, Inc. v. Citigroup Global Markets, Inc., 840 F.3d 1152, 1158 (9th Cir. 2016). Characteristics of a fair hearing include notice, an opportunity to be heard and to present relevant and material evidence, and unbiased decisionmakers. See U.S. Life Ins. Co. v. Superior Nat. Ins. Co., 591 F. 3d 1167, 1177 (9th Cir. 2010).

The Interim Award clearly states that it "is an Interim Award and not a Final Award or a Partial Final Award." Dkt. 43-1, Exh. I at 19. Accordingly, it informed the parties that it was not a final determination of the issues and, as such, would ordinarily not be enforced in district court. See Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373, 1375 (9th Cir. 1987). Moreover, all of the respondents, including Good Stuff, had the opportunity to be heard on their liability for contract damages and briefed this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

issue extensively.  The parties engaged in a two-month long discovery process specifically on the issue of equitable estoppel—the ground on which the Final Award held that Good Stuff was liable for contract damages.  Dkt. 1-2 at 74.  The parties briefed the equitable estoppel issue over the following two months, and oral argument was held on the issue on March 26, 2020.  Id.

Here, the parties received a "fundamentally fair hearing," as required by FAA § 10(a)(3).  See U.S. Life Ins. Co., 591 F. 3d at 1177 (explaining that party "receive[d] a fair hearing" where [i]t had notice, it had the opportunity to be heard and to present relevant and material evidence, and the decisionmakers were not infected with bias.") (internal quotation marks omitted).  The fact that Good Stuff did not have an opportunity to address the equitable estoppel issue again in between issuance of the Interim Award and the Final Award does not render the hearing fundamentally unfair.  And Good Stuff has not shown that it was prejudiced, as there is no evidence that, had Good Stuff had yet another chance to litigate the issue, it would not be held liable for contract damages in the Final Award.  See id. (finding vacatur on § 10(a)(3) grounds improper where "the parties were not prejudiced by the process" and party challenging award "failed to establish that it was denied an opportunity to present its case").

### 3.    Individualized Prevailing Party Determinations

In the second phase of arbitration, the arbitrator considered the parties' entitlement to attorneys' fees under Section 21 of the APA, which grants the arbitrator authority to award attorneys' fees and costs to the party that prevails in an arbitrated dispute.  Both petitioners and respondents argued that they had prevailed and thus were entitled to attorneys' fees.  See dkt. 1-2 at 75.  The arbitrator interpreted Maryland law and the language of Section 21 to conclude that the "unit of consideration" under Section 21 was the entire dispute subject to arbitration, viewed as a whole, not individual claims within that dispute, and that there could only be one prevailing party entitled to fees arising out of the dispute.  Id. at 98.  The arbitrator then applied Maryland law to determine that petitioners, not respondents, were the "prevailing party."  Id. at 75-76.

Respondents argue that the arbitrator's "failure to make individualized prevailing party determinations in awarding attorneys' fees was irrational, self-contradictory, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|-------------------------|------|------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

led to petitioners being awarded legal fees on unnecessary issues that petitioners lost." Dkt. 43 at 20. According to respondents, the arbitrator improperly interpreted Section 21 to contemplate only one prevailing party to whom attorneys' fees could be awarded. Id. at 22. Respondents contend that, instead of determining which side (Azod parties or Robinson parties) prevailed with respect to the macro-level dispute, the arbitrator should have analyzed which individual parties prevailed on each claim and counterclaim. Id. Because petitioners did not establish that the non-Cecilia respondents breached the APA, respondents assert that the non-Cecilia respondents should have been awarded attorneys' fees against petitioners. Id.

In making this argument, respondents point to Section 21 of the APA, which states that "the Parties agree to confidentially arbitrate . . . any and all disputes or claims arising out of or related to the [APA]" and that "the arbitrator of any such dispute may, in the arbitrator's discretion, award money damages to the prevailing Party, including the costs of the arbitration, and attorneys' fees." Id. at 21. According to respondents, this language requires that the arbitrator perform an analysis of prevailing party attorneys' fees as to each of the "disputes" between the various parties within the arbitration. Id. at 22. The arbitrator rejected that argument, concluding that the "unit of consideration" for awarding fees and costs is one dispute comprising all claims, and finding that he could exercise his discretion to find only one winner in that dispute entitled to fees and costs. Id. This conclusion, respondents argue, ignores Section 21's language contemplating multiple "disputes" being subject to arbitration. Id. at 22.

Respondents additionally argue that the arbitrator's decision ignored "well-settled law that where the plaintiff prevails against only one of several defendants, each defendant is entitled to a separate and individualized determination of which party is the prevailing party." Id. at 23-24 (citing Scott v. Art of Optiks Cherry Creek Inc., 60 P.3d 770 (Colo. App. 2002)). Respondents state that they were denied the opportunity to argue that they prevailed as to their individual disputes with the petitioners, which, according to respondents, was "manifestly unjust." Id. at 25.

Petitioners counter that respondents "repeatedly made these same arguments to the [a]rbitrator in briefs and during multiple hearings" and "each time they were denied." Dkt. 44 at 17. Petitioners point out that one of the many rounds of briefing included

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

briefing specifically on the issue of whether Robinson and Morgan Creek were entitled to their attorneys' fees and costs as prevailing parties.  Id.  Thus, the arbitrator ruled against Robinson and Morgan Creek only after they were fully heard on the issue.  Id.  Petitioners additionally state that the arbitrator's interpretation of the contract "must be upheld so long as it draws its essence from the agreement." Id. at 18 (quoting Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 235 (4th Cir. 2006) (internal quotation marks omitted).  The APA, petitioners argue, clearly grants the arbitrator discretion in awarding money damages to the prevailing party, thereby "empower[ing] the [a]rbitrator to both determine the prevailing [p]arty and to award them [attorneys' fees and costs], at his discretion." Id.  According to petitioners, the arbitrator properly exercised his discretion in ruling that respondents were not the prevailing parties in the arbitration, and that the APA only contemplates one prevailing party.  Id.

The Court finds that the arbitrator's interpretation of Section 21 of the APA to contemplate one prevailing party was not a manifest disregard of governing law or completely irrational.

In challenging an award pursuant to FAA § 10(a)(4), "[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." Stolt-Nielsen S.A., 130 S. Ct. at 1767.  Rather, "[a]rbitrators 'exceed their powers' . . . not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.'" Lagstein, 607 F.3d at 641 (quoting Kyocera Corp., 341 F.3d at 997).  To show a manifest disregard of law, the "moving party must show that the arbitrator 'underst[oo]d and correctly state[d] the law, but proceed[ed] to disregard the same.'" Collins v. D.R. Horton, Inc., 505 F.3d 874, 879 (9th Cir. 2007) (quoting San Martine Compania De Navegacion, S.A. v. Saguenay Terminals Ltd., 293 F.2d 796, 801 (9th Cir. 1961)).  And an award is only "completely irrational" "where the arbitration decision fails to draw its essence from the agreement." Lagstein, 607 F.3d at 642 (internal quotation marks omitted).  Reviewing courts "have no authority to vacate an award solely because of an alleged error in contract interpretation. Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh, 933 F.2d 1481, 1486 (9th Cir. 1991).  Rather, "[w]e need only determine whether the arbitrators' interpretation was 'plausible.'" Id. (citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

In relevant part, Section 21 of the APA states as follows:

> [T]he Parties agree to confidentially arbitrate . . . any and all disputes or claims arising out of or related to the validity, enforceability, interpretation, performance or breach of this Agreement . . . . The Parties further agree that the arbitrator of any such dispute, may, in the arbitrator's discretion, award money damages to the prevailing Party, including the costs of the arbitration, and attorneys' fees, as well as permanent injunctive relief.

Dkt. 1-3 at 11.  In interpreting this provision, the arbitrator cited Maryland law for the findings that "the prevailing party is the one that succeeds 'on the core claims that formed the basis of the dispute between the parties,'" dkt. 1-2 at 75 (quoting Royal Inv. Grp., LLC v. Wang, 183 Md. App. 406, 457-58 (2008)), and that "[t]he prevailing party need not succeed on all claims asserted by it or against it," dkt. 1-2 at 75 (citing Imgarten v. Bellboy Corp., 383 F. Supp. 2d 825, 842 (D. Md. 2005).  The arbitrator additionally explained that the merits hearing was dominated by respondents' counterclaims, on which petitioners prevailed against respondents.  Dkt. 1-2 at 75-76.

Moreover, the Final Award conducted a close analysis of the text of Section 21, concluding that the "language specifies that attorneys' fees and costs will be awarded to the prevailing Party of 'any such dispute.'  The unit of consideration for allocation fees and costs is the entire 'dispute,' not individual claims in it."  Id. at 100-01.  The Final Award also relies on the singular "the prevailing Party" to "interpret Section 21 to mean that when a dispute involving multiple claims is submitted to arbitration, attorneys' fees and costs will, in the arbitrator's discretion, be awarded to the single party the arbitrator decides prevailed."  Id. at 101.

Respondents have not shown that, in so interpreting Section 21, the arbitrator "understood and correctly stated the law, but proceeded to disregard the same."  Collins, 505 F.3d at 879 (alterations omitted).  Nor have respondents shown that the interpretation "fails to draw its essence from the agreement" so as to be completely irrational.  Lagstein, 607 F.3d at 642.  Rather, the arbitrator drew from the APA's text and its suggestions of a singular prevailing party and dispute to conclude that individualized prevailing party determinations would be inappropriate.  The arbitrator further relied on Maryland case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|-------------------------|------|------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

law in support of this interpretation.  While respondents have set forth an alternative interpretation of Section 21, they have failed to show that the arbitrator's interpretation was not "plausible."  Employers Ins. of Wausau, 933 F.2d at 1486.

Furthermore, respondents' argument that they were denied the opportunity to argue that they prevailed as to their individual disputes is unconvincing.  The record indicates that the arbitrator heard all of respondents' arguments and addressed them in the Final Award, which spans 180 pages, with 92 pages of detailed analysis.  The Final Award expressly raises and responds to respondents' arguments as to why individualized prevailing party determinations were required.  See dkt. 1-2 at 101 (explaining why respondents' reliance on a sample JAM clause for claims-level apportionment was unpersuasive).  Accordingly, the Court concludes that the arbitrator's determination that Section 21 only contemplated one prevailing party survives § 10(a)(4).

        4.      <u>Equitable Estoppel</u>

Having interpreted Section 21 of the APA to contemplate one prevailing party on the core dispute subject to arbitration, and having determined that petitioners were the prevailing side to whom attorneys' fees should be awarded, the arbitrator next determined who among the non-prevailing parties would be required to pay the attorneys' fees.  The arbitrator rejected respondents' argument that the non-Cecilia respondents could not be bound by Section 21 because they were not signatories to the APA.  In reaching this result, the arbitrator reasoned that Robinson and Morgan Creek had attempted to enforce Section 21 to their benefit, even though they had not signed the APA, and, accordingly, they should be equitably estopped from disclaiming liability under Section 21 on account of their not signing the APA.

Respondents argue that this final award of attorneys' fees and costs against non-Cecilia respondents was irrational and exhibited a manifest disregard of governing law.  Dkt. 43 at 12.  Respondents provide two reasons in support of this contention.  First, they argue that the arbitrator separately ruled that the non-Cecilia respondents were not entitled to seek fees as prevailing parties under Section 21 of the APA.  Id.  According to respondents, because the Final Award stated that the non-Cecilia respondents could not separately claim fees, the non-Cecilia parties "were never afforded any opportunity to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|-------------------------|------|-------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

claim a benefit of the Section 21 fee provision." Id. at 14-15 (internal quotation marks omitted). Thus, respondents contend, it was improper to find that they could not disclaim liability under Section 21 because they attempted to claim a benefit under it. Id. They cite Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC for the rule that "a party claiming fees must 'establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party.'" Id. at 16 (citing 162 Cal. App. 4th 858, 899 (2008)).

Second, they argue that the arbitrator disregarded Maryland law in requiring a finding of detrimental reliance by petitioners before applying the equitable estoppel doctrine. Dkt. 43 at 16. The arbitrator relied on an appellate level case, Bessette v. Weitz, 148 Md. App. 215, 241 (2002), for the rule that while detrimental reliance must normally be shown, "there may be instances, however, of equitable estoppel based solely on conduct by one party that makes it inequitable and unconscionable to allow him to assert rights and claims against another party, without the necessity of reliance by the second party." Id. at 241. This rule, respondents argue, runs contrary to the Maryland Supreme Court's prior determination in J.F. Johnson Lumber Co. v. Magruder, 218 Md. 440 (1958), that detrimental reliance is required to support the application of equitable estoppel in Maryland. Dkt. 42 at 18. Moreover, respondents point out, Bessette states that its rule is consistent with "the ancient maxim that no one should profit from his own conscious wrong," id. (citing 148 Md. App. At 242), but, here, the non-Cecilia respondents did nothing wrong in asserting a claim for fees and costs and did not profit from doing so given that the arbitrator never considered or granted their claim, dkt. 43 at 19.

In reply, petitioners argue that respondents were fully heard on the equitable estoppel issue and that, after full consideration, the arbitrator held that Robinson and Morgan Creek were jointly liable under the doctrine of equitable estoppel because they had attempted to enforce Section 21 against petitioners. Dkt. 44 at 16. Petitioners additionally point out that Robinson and Morgan Creek conceded at oral argument that they were bound by Section 21. Id.

The Court is not persuaded by either of respondents' arguments. The arbitrator concluded that the non-Cecilia respondents, who were not signatories to the APA, could

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

nonetheless be held liable for attorneys' fees because they sought to enforce the APA, including the attorneys' fees provision, to their benefit. Specifically, the arbitrator explained in the Interim Award, (adopted by the Final Award), that both Robinson and Morgan Creek sought attorneys' fees and costs and respondents introduced expert testimony that the non-Cecilia respondents should all be awarded attorneys' fees and costs under the APA. Dkt. 43-1, Exh. I at 13-14. Based on these findings and his analysis of the governing law, the arbitrator concluded that "Mr. Robinson and Morgan Creek claim a benefit under Section 21 while disclaiming any liability under it. This is inequitable; they cannot use Section 21 as both a sword and a shield." Id. at 17. Accordingly, the arbitrator concluded, Robinson and Morgan Creek should be bound by Section 21 as if they were signatories. Id.

This conclusion is neither a manifest disregard for governing law, nor completely irrational. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GBMH, 206 F.3d 411, 417-18 (4th Cir. 2000) ("[T]he doctrine [of equitable estoppel] recognizes that a party may be estopped from asserting the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him."); Seney v. Rent-A-Ctr., Inc., 909 F. Supp. 2d 444, 453-54 (D. Md. 2012), aff'd 738 F.3d 631 (4th Cir. 2013) ("[O]ne cannot claim a benefit of a contract and simultaneously avoid its burdens; to do so would be inequitable and would contravene the FAA's underlying purpose.").

Contrary to respondents' argument, the finding that respondents were not entitled to fees under Section 21 is not inconsistent with the application of equitable estoppel because the arbitrator's finding rested on the fact that respondents asserted claims under the APA, not that they were successful on those claims. Blickman, which respondents cite for their argument, does not undermine the arbitrator's conclusion. Blickman explains that "[a] party claiming fees . . . must 'establish that the opposing party *actually* would have been entitled to receive them if he or she had been the prevailing party." 162 Cal. App. 4th at 899 (quoting Leach v. Home Savings & Loan Assn., 185 Cal. App. 3d 1295, 1307 (1986)). Respondents argue that they were not the prevailing party and thus they did not have a right to fees under Section 21, but this argument misinterprets the requirement. The relevant question is not whether respondents were the prevailing party;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

rather, it is whether they would have been entitled to fees if they *were* the prevailing party, as defined by Section 21.  The arbitrator explained that the "prevailing party" under Section 21, whether it be respondents or petitioners, would be entitled to attorneys' fees.  See dkt. 43, Exh. I at 5 (analyzing whether petitioners or respondents constituted the "prevailing party" because "[t]he first task" for purposes of determining attorneys' fees "is to identify the 'prevailing party'" under Section 21 of the APA).  The ultimate finding that respondents were not the prevailing party does not change this analysis.

In their opposition and at oral argument, respondents argued at length that the use of equitable estoppel to hold Morgan Creek and Robinson responsible for attorneys' fees when they prevailed on their individual claims, simply because they requested attorneys' fees, is unfair and unreasonable.  But this contention conflates the arbitrator's analyses and overstates the scope of the arbitrator's application of equitable estoppel.  The arbitrator first interpreted Section 21 of the APA to contemplate only one prevailing party to whom attorneys' fees could be awarded.  As discussed above, "the arbitrator's interpretation was plausible" and therefore must be upheld.  Employers Ins. of Wausau, 933 F.2d at 1486 (internal quotation marks and citations omitted).  Having determined that the prevailing side entitled to attorneys' fees was petitioners and that respondents did not prevail, the arbitrator relied on equitable estoppel for the narrow and straightforward finding that the non-Cecilia respondents could not disclaim liability under Section 21, on account of their not having signed the APA, because they had claimed the benefit of attorneys' fees under the same provision, despite not being signatories.  In other words, the arbitrator concluded that because respondents had attempted to exercise a right under Section 21, it would be inequitable to allow them to hide behind their not being signatories to avoid liability under it.  Respondents have failed to show that this conclusion was so unsound that it was completely irrational or a manifest disregard of the law under § 10(a)(4).

Likewise, the arbitrator's application of equitable estoppel without a finding of detrimental reliance did not run afoul of § 10(a)(4).  The Interim Award explains that while "the Court of Special Appeals of Maryland has written that the elements of estoppel are usually described as including reliance by the estopping party," "[r]eliance is not required."  Dkt. 43-1, Exh. I at 12.  In support of this conclusion, the arbitrator quoted Bessette v. Weitz, 148 Md. App. 215, 241-42 (2002) ("There may be instances, however,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|----------|--------------------------|------|-------------------|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

of equitable estoppel based solely on conduct by one party that makes it inequitable and unconscionable to allow him to assert rights and claims against another party, without the necessity of reliance by the second party." Dkt. 43-1, Exh. I at 12. The arbitrator concluded that the line of Maryland cases applying equitable estoppel to bind non-signatories to contracts under which they attempted to claim a benefit did not require detrimental reliance. Id. at 12-13. See, e.g., Int'l Paper Co., 206 F.3d 411. In light of the arbitrator's reliance on governing law expressly stating that a showing detrimental reliance is not always required, this is not a circumstance where the arbitrator "understood and correctly stated the law, but proceeded to disregard the same." Collins, 505 F.3d at 879 (alterations omitted).[2]

---

[2] Respondents additionally argue that the arbitrator improperly used the doctrine of equitable estoppel to find Robinson and Morgan Creek jointly and severally liable for attorneys' fees because there was no finding of joint liability or acts in concert. Dkt. 43 at 19-20. They argue that "joint and several liability is typically reserved for situations involving joint tortfeasors or parties acting in concert to create a single indivisible harm," and the arbitrator's determination, in the absence of such a situation, is unfair and constitutes a manifest disregard of the law. Id. at 19-20. The arbitrator's finding that respondents could be held jointly and severally liable for attorneys' fees, however, is consistent with the arbitrator's interpretation of Section 21 as contemplating one side of the dispute bearing the other side's fees and costs and with the arbitrator's conclusion that the non-Cecilia parties should be included as part of the non-prevailing side, pursuant to equitable estoppel. As discussed above, neither of these determinations runs afoul of § 10(a)(4). Moreover, nothing in Section 21 required the arbitrator to adjudicate the relative liability of the non-prevailing parties. On the contrary, the award of attorneys' fees and costs to the prevailing party was within the arbitrator's discretion. Respondents' suggestion that the arbitrator had a duty to allocate responsibility among respondents, therefore, has no basis in the underlying agreement. Consequently, the arbitrator did not "act outside the scope of the parties' contractual agreement" so as to "exceed [his] powers for the purposes of § 10(a)(4)." Lagstein, 607 F.3d at 643 (internal quotation marks omitted). The allocation of responsibility among respondents is an issue that they may take up with one another, if they so wish, but respondents have not shown that

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-05214-CAS (MRW) | Date | NOVEMBER 9, 2022 |
|---|---|---|---|
| Title | ARMIN AZOD, ET AL. V. JAMES G. ROBINSON, ET AL. | | |

In short, respondents have not demonstrated that the arbitrator's decision was contrary to the facts or to the relevant case law or would warrant a finding that "the award is 'completely irrational,' or exhibits 'manifest disregard of law.'"  Lagstein, 607 F.3d at 641 (quoting Kyocera Corp., 341 F.3d at 997).  Thus, regardless of whether a court could reach a different conclusion, vacatur would be improper.  See Employers Ins. of Wausau, 933 F.2d at 1486.

**V.      CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** petitioners' motion to confirm the Final Award.

IT IS SO ORDERED.

|  |  | : |  |
|---|---|---|---|
| Initials of Preparer | KMH | | |

---

finding Robinson and Morgan Creek jointly and severally liable, as opposed to calculating individualized liability amounts for each of them, constitutes a manifest disregard of the law.